## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| KHALIL A. MUHAMMAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 2:05-CV-378 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER

This matter is before the Court on the "Opening Brief of Plaintiff in Support of his Complaint" wherein Plaintiff requests this Court to reverse the Social Security Commissioner's final decision and remand this case for further administrative proceedings, filed by Plaintiff, Khalil A. Muhammad, on March 15, 2006. For the reasons set forth below, the decision of the Commissioner denying Plaintiff, Khalil Muhammad's, application for disability insurance benefits is **AFFIRMED.**

BACKGROUND

On November 28, 2002, Plaintiff, Khalil A. Muhammad, applied for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423(d), and for

Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1382 and 1382(c). (Tr. 105-115). According to his application, Plaintiff became unable to work on November 15, 2002, because of his diabetes and left toe amputation. (Tr. 106). On April 22, 2003, the Social Security Agency denied Plaintiff's application. (Tr. 49-55). On May 16, 2003, Plaintiff requested the Social Security Agency reconsider its decision. (Tr. 56). This too was denied. (Tr. 57-59). Then, on August 11, 2003, Plaintiff requested an administrative hearing. (Tr. 60). On October 4, 2004, Plaintiff appeared with counsel at an evidentiary hearing before Administrative Law Judge, William J. Wilkin ("ALJ"). (Tr. 39). Vocational expert, Frank Mendrick, testified at the hearing. (Tr. 39, 80, 468, 517-526). On February 12, 2005, the ALJ issued his decision, denying Plaintiff's request for Social Security benefits. The ALJ found that, despite the limitations caused by Plaintiff's impairments, Plaintiff was not disabled at step-four of the five-step sequential evaluation. (Tr. 45); *see* 20 C.F.R. § 404.1520(f)(2005). Alternatively, the ALJ found Plaintiff was disabled at step five. (Tr. 44); *see* 20 C.F.R. § 404.1520(g)(2005).

Plaintiff requested the Appeals Counsel review the ALJ's decision. (Tr. 30-33). This request was denied. (Tr. 5). Accordingly, the ALJ's decision became the Commissioner's final decision. See 20 C.F.R. § 422.210(a)(2005). Plaintiff has initiated the instant action for judicial review of the Commissioner's final

decision pursuant to 42 U.S.C. section 405(g) and 1383(c)(3).


DISCUSSION

Facts

   Education and Work History

   Plaintiff was 31 years of age at the time of the alleged onset of the disability (November 15, 2002) and was 34 when the ALJ issued his decision.  (Tr. 40, 98).

   Plaintiff's work history began in 1996 when he worked full-time as a shipping clerk for a recycling business.  (Tr. 125, 478-479). As a shipping clerk, Plaintiff primarily worked at a computer entering data and printing labels.  (Tr. 479).  He did not do much lifting; the most he had to lift was "about five to ten pounds." (Tr. 479).  He worked as a shipping clerk until December 1997.  Beginning in 2000, Plaintiff began to hold various jobs for a short duration.  For a few months, Plaintiff worked for a temporary service agency, wherein he did work as a laborer.  (Tr. P. 480).  Plaintiff also worked at the fast-food restaurant, Taco Bell, on two separate occasions. (Tr. 125, 482-484).  In between his stints working at Taco Bell, Plaintiff worked part-time inspecting vehicles for emission control.  (Tr. 483-484).  After leaving Taco Bell for the second time, in early 2003, Plaintiff collected unemployment benefits from June through October of that year.  (Tr. 486).  In November 2003, Plaintiff worked with Davis Staffing, which assigned him to working one day a week, four

-3-

hours per day, as a driver at an auto auction.  (Tr. 486-487).

Medical History

Plaintiff has had Type 1 Diabetes Mellitus since he was a child. (Tr. 143, 166, 174).  In the past few years, Plaintiff has had a variety of complications of his diabetes.  (Tr. 143, 166, 176, 208, 217, 226, 261, 268, 305, 329, 336, 337, 339, 357, 358, 362, 379, 390, 391, 411, 412).  These complications caused him to be admitted to a hospital on numerous occasions.  In July 2001, Plaintiff was taken to the Methodist Hospital emergency room due to diabetic ketoacidosis. (Tr. 143-148).  Plaintiff was found to be noncompliant with his treatment regimen.  (Tr. 149).  In February 2002, Plaintiff presented at the emergency room for diabetic ketoacidosis and gastritis.  (Tr. 166-176).  On August 28, 2002, Plaintiff was taken to the emergency room complaining of coughing with nasal congestion.  (Tr. 195).  In November 2002, Plaintiff again arrived at the Methodist Hospital emergency room complaining of left foot pain, chest pain and back pain. (Tr. 213).  He was diagnosed with a urinary tract infection, a toe abscess, and uncontrolled diabetes mellitus.  (Tr. 212).

On November 22, 2002, Plaintiff had his first, or big, left toe amputated.  (Tr. 41, 226).  On February 17, 2003, he again presented at the Methodist Hospital emergency room complaining of swelling and increasing pain in his second left toe.  (Tr. 263, 266).  Plaintiff was admitted for uncontrolled diabetes and infected left toe, which

was ultimately partially amputated.  (Tr. 268-272).  On March 10, Plaintiff went to the emergency room complaining of vomiting and abdominal pain.  (Tr. 288, 290).  Eventually, he was stabilized and discharged.  (Tr. 283-286).

On April 11, 2003, Dr. Teofila Bautista, M.D., performed a consultative examination of Plaintiff at Social Security's request. During the exam, Plaintiff reported that he could walk two and one-half blocks with crutches, climb seven to eight stairs, and stand unassisted for 15 to 20 minutes.  (Tr. 303).  He also reported to Dr. Bautista that he could lift about 20 pounds, perform light household chores at this own pace, and was independent with his own hygiene and grooming.  (Tr. 303).  Plaintiff had no crutches at the time of the examination.  (Tr. 303).  Dr. Bautista observed that Plaintiff walked with a slight limp due to pain the left first and second toes, but he used no assistive walking device.  (Tr. 303).

On April 22, 2003, T. Crawford, a medical consultant, reviewed the evidence in Plaintiff's claim file and concluded that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; stand/walk about six hours in an 8-hour workday; and sit about six hours in an 8-hour workday.  (Tr. 308).  The medical consultant did not find any postural or manipulative limitations were established.  (Tr. 309-310). In July 2003, Dr. A. Dobson, M.D., reviewed the evidence in Plaintiff's claim file and concurred with the medical consultant's opinion.  (Tr. 314).

On April 29, 2003, Plaintiff returned to the Methodist Hospital emergency room complaining of pain and swelling of the left foot. (Tr. 320). Dr. Legaspi noted there was an open wound that was draining on Plaintiff's second left toe that was partially amputated earlier in the year. (Tr. 317). Plaintiff was diagnosed with osteomyelitis and marked cellulitis of the second toe (Tr. 317, 337, 339). Plaintiff was treated with antibiotics. (Tr. 317-319).

On June 22, 2003, Plaintiff again presented at the Methodist Hospital emergency room, this time complaining that he hurt his lower back when he slipped in the bathtub. (Tr. 342). Plaintiff was diagnosed with hyperglycemia, diabetes mellitus, back pain and hypertension. (Tr. 343). Plaintiff informed the hospital staff that he was unable to afford his necessary prescriptions and he was referred to social services. (Tr. 343, 346).

On August 12, 2003, Plaintiff visited the Methodist Hospital emergency room complaining of vomiting. (Tr. 353-354). He was admitted to the intensive care unit in serious condition with very high blood sugars. (Tr. 358-360). Among other things, Plaintiff was diagnosed with having acidosis and also being medically noncompliant. (Tr. 354, 358). He was stabilized and was informed that he needs to be very compliant with his medical regimen. (Tr. 362). Three days later, Plaintiff showed up at the emergency room, again complaining of vomiting. (Tr. 372). He was briefly admitted into the intensive care unit and diagnosed with acidosis, but discharged when he

-6-

stabilized.  (Tr. 382-384).

On November 3, 2004, Dr. Herbert White, Jr., M.D., M.P.H., performed a consultive examination of Plaintiff.  (Tr. 408-417). Plaintiff reported that his amputated toes resulted in pain and difficulty walking more than one-half block, standing more than 15 minutes, and in going up stairs.  (Tr. 408).  Upon examination, Dr. White found Plaintiff to have no swelling and a normal range of motion in his legs and feet.  (Tr. 410).  Dr. White also noted that Plaintiff did exhibit a moderately antalgic gait with complaints of pain in both lower extremities, but no assistive device was needed for ambulation. (Tr. 411).  In addition, Plaintiff had no difficulty getting onto and off of the examination table, mild difficulty standing on only the right leg, no ability to stand on only the left leg, severe difficulty standing on his left toes, and moderate difficulty standing on his right toes, tandem walking, standing on his heels and squatting.  (Tr. 411).  Dr. White noted that Plaintiff could lift 30 pounds occasionally and 10 pounds frequently, stand/walk two hours in an eight-hour workday (five to ten minutes at a time), and sit without limitation.  (Tr. 415).  Plaintiff could not climb, but could occasionally balance, stoop, crouch, kneel, and crawl.  (Tr. 415).

On November 20, 2004, Plaintiff arrived at the emergency room complaining of chest pain.  (Tr. 422).  An echocardiogram was performed, which showed left atrial enlargement, left ventricular hypertrophy, diastolic dysfunction and trivial pulmonic regurgitation.

(Tr. 432).


   ALJ Hearing Testimony

   Certified Rehabilitation Counselor, Frank Mendrick, was provided
with Plaintiff's past work history information and testified as a
vocational expert at the administrative hearing. (Tr. 517). Mendrick
testified that Plaintiff's prior employment as a shipping/receiving
clerk was semi-skilled and described by Plaintiff as sendentary work.
(Tr. 517).   During his testimony, the ALJ posed a series of
hypothetical questions to Mendrick. (Tr. 518-520). Among those, the
ALJ asked Mendrick to assume an individual with Plaintiff's vocational
characteristics who could perform sedentary work, could not climb,
balance, or work at heights, and needed to change position at will.
(Tr. 518-520). Mendrick testified that shipping/receiving clerk job
could be performed as well as other jobs in the national economy such
as inspection, general assembly and cashier. (Tr. 520).

   Plaintiff also testified at the hearing. He stated that he has
lost some feeling in his feet and toes. (Tr. 489). Plaintiff said
he can stand for between 10 to fifteen minutes before he has to sit
down.   (Tr. 502).   Plaintiff believes he can sit in two hour
intervals. (Tr. 502). He occasionally gets a sharp pain in his feet
while sitting.   (Tr. 490).   Plaintiff testified that he can lift
anywhere from 10 to 30 pounds and can carry 20 to 30 pounds for about
a block. (Tr. 502-503). Plaintiff noted that he has balance problems

-8-

as a result of his toe amputations.  (Tr. 489, 507).  Plaintiff also claims to suffer from lower back pain; sitting for prolonged periods of time makes his back start to hurt.  (Tr. 491).

ALJ's Findings

The ALJ made the following specific findings:

1.   The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.   The claimant has not engaged in substantial gainful activity since the alleged onset  of disability.

3.   The claimant has the following "severe" impairments: insulin-dependent diabetes mellitus, with polyneuropathy and new onset retinopathy; and status post amputation of two left toes (20 CFR 404.1520(c) and 416.920(b)).

4.   These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.   The claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.   The claimant has the following residual functional capacity: he can lift a maximum of 10 pounds at a time, and occasionally carry items such as docket files, small tools and ledgers. In addition, he can occasionally stand and walk. However, he cannot climb or balance, or work around heights or moving machinery.  In addition, he must be allowed to change positions at

will.

7.  The claimant's past relevant work as a
    shipping and receiving clerk did not
    require the performance of work-
    related activities precluded by his
    residual functional capacity (20 CFR
    404.1565 and 416.965).

8.  The claimant's medically determinable
    impairments do not prevent the
    claimant from performing his past
    relevant work.

9.  The claimant was not under a
    "disability" as defined in the Social
    Security Act, at any time through the
    date of the decision (20 CFR
    404.1520(f) and 416.920(f)).

DISCUSSION

This Court has authority to review the Commissioner's decision
to deny social security benefits. 42 U.S.C. § 405(g).  "The findings
of the Commissioner of Social Security as to any fact, if supported
by substantial evidence, shall be conclusive . . . ." *Id*.  Substantial
evidence is defined as "such relevant evidence as a reasonable mind
might accept as adequate to support a decision." *Richardson v.
Perales*, 402 U.S. 389, 401 (1971).  In determining whether substantial
evidence exists, the Court shall examine the record in its entirety,
but shall not substitute its own opinion for the ALJ's by
reconsidering the facts or reweighing evidence. *Jens v. Barnhart*, 347
F.3d 209, 212 (7th Cir. 2003).  With that in mind, however, this Court
reviews the ALJ's findings of law de novo and if the ALJ makes an
error of law, the Court may reverse without regard to the volume of
evidence in support of the factual findings. *White v. Apfel*, 167 F.3d

-10-

369, 373 (7th Cir. 1999).

As a threshold matter, for a claimant to be eligible for disability benefits under the Social Security Act, the claimant must establish that he is disabled.  To qualify as being disabled, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 4169(i)(1).  To determine whether a claimant has satisfied this statutory definition, the ALJ performs a 5-step evaluation:

| | |
|---|---|
| Step 1: | Is the claimant performing substantial gainful activity: If yes, the claim is disallowed; if no, the inquiry proceeds to Step 2. |
| Step 2: | Is the claimant's impairment or combination of impairments "severe" and expected to last at least twelve months?  If not, the claim is disallowed; if yes, the inquiry proceeds to Step 3. |
| Step 3: | Does the claimant have an impairment or combination of impairments that meets or equals the severity of an impairment in the SSA's Listing of Impairments, as described in 20 C.F.R. § 404, Subpt. P, App. 1?  If yes, then claimant is automatically disabled; if not, then the inquiry proceeds to Step 4. |
| Step 4: | Is the claimant able to perform her past relevant work experience?  If yes, the claim is denied; if no, the inquiry proceeds to Step 5 where the burden of proof shifts to the Commissioner. |
| Step 5: | Is the claimant able to perform any |

> other work within her residual
> functional capacity in the national
> economy: If yes, the claim is denied;
> if no, the claimant is disabled.

20 C.F.R. § 404.1520(a)(4)(i)-(iv); *see also Herron v. Shalala*, 19 F.3d 329, 333 n. 8 (7th Cir. 1994).

In making the Step 4 and Step 5 inquiry, the ALJ must consider an assessment of the claimant's residual functional capacity ("RFC"). A RFC is an assessment based upon all of the relevant evidence of what the claimant can still do despite his limitations. 20 C.F.R. § 404.1545(a). The RFC assessment helps to evaluated the types of work available to an individual with particular limitations. *Id*. The final responsibility for deciding a claimant's RFC rests with the ALJ. 20 C.F.R. § 404.1527(f)(2). The claimant bears the burden of proof through Step 4; the burden shifts to the Commissioner at Step 5. *Herron*, 19 F.3d at 333 n.8. Here, the ALJ found that Plaintiff's impairments did not meet or medically equal one of the impairments listed in Step 3. The ALJ went on and determined that Plaintiff's impairments did not prevent him from performing his past relevant work under Step 4. Alternatively, the ALJ found Plaintiff not disabled based on his ability to perform various jobs in the regional economy. In light of the applicable standards, and after a thorough review of the administrative record, the Court finds the decision is supported by substantial evidence and affirms the Commissioner's final decision.

Notably, Step 1 and Step 2 are not at issue here. Thus, only a review of the ALJ's decisions as to Steps 3, 4 and 5 follow.

-12-

Plaintiff Did Not Meet an SSA Listing of
Impairment to be Considered Disabled at Step 3

A claimant will qualify as disabled if his impairment or combination of impairments meets or equals the severity of an impairment in the SSA's Listing of Impairments. Plaintiff has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria in the listing. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). In the SSA's February 12, 2005, opinion, the ALJ accepted the State agency physician's signature on the disability determination form, dated July 28, 2003, concluding that Plaintiff's conditions did not meet or medically equal any impairment listed in Appendix 1 to Subpart P, Regulations No. 4. (Tr. 43, 45, 50). *Scheck v. Barnhart*, 357 F.3d 697, 700-01 (7th Cir. 2004).

Plaintiff claims he should be deemed disabled because he met the criteria of Listing 9.08B in the Listing of Impairments. To satisfy Listing 9.08B, Plaintiff was required to show that he had diabetes mellitus with "acidosis occurring at least on the average of once every 2 months documented by appropriate blood chemical tests (pH or PCO2 or bicarbonate levels)." 20 C.F.R. Pt. 404, Sbpt. P, App. 1 § 9.08B. Plaintiff points to the fact that in August 2003, after the date that the State agency physician signed the disability determination form, Plaintiff was admitted to the hospital on two

-13-

occasions for, among other things, diabetic ketoacidosis. (Tr. 41, 354, 380). Considering these two additional incidents, in the six month period from March 2003 to August 2003, Plaintiff's condition of ketoacidosis was documented in the hospital four times. (Tr. 41, 283, 349, 354, 358, 380). Plaintiff argues that four occurrences of acidosis in a period of six months satisfies the requirements of Listing 9.08B. Further, Plaintiff argues that, under SSR 96-6p, the ALJ erred in failing to obtain an updated medical opinion to take into account his two additional visits to the hospital for acidosis. This is a far different position than Plaintiff presented to the ALJ in October of 2004. Then, when discussing the possible meeting of various listings, Plaintiff's counsel stated, "I might indicate as well that [Plaintiff] has had numerous acidosis attacks which they referred to in the medical records, but we have a tough time showing whether or not it's every two months because, of course, he doesn't go to the doctors." (Tr. 475). Because Plaintiff did not argue Listing 9.08B was met at the administrative hearing, the current argument seems to be waived. *Union Tank Car Co., Inc. v. Occupational Safety & Health Admin.*, 192 F.3d 701, 707 ("[F]ailure to present an argument to the ALJ does constitute waiver of the right to raise it on appeal . . .."). Nevertheless, in response to Plaintiff's new argument, the Government sets forth that the Plaintiff's "carefully selected six month period" is insufficient to satisfy Listing 9.08B. Instead, the Government proffers that the impairment must be present

-14-

for 12 months.  Consequently, the Government says, there was no need for the ALJ to obtain an updated medical opinion.

Notably, neither party has cited to any legal authority that has applied, or refused to apply, a specific duration requirement to the impairment in Listing 9.08B.  Moreover, it is clear that, other than requiring the condition to occur once every two months, Listing 9.08B itself does not set out a specific duration requirement.  After due consideration, the Court finds that to satisfy Listing 9.08B, Plaintiff must show that the impairment of diabetes mellitus with acidosis occurring at least on the average of once every 2 months, must occur for 12 months or be expected to last that long.  This conclusion is based primarily on the fact that the basic definition of disability requires an impairment to last for 12 months or be expected to last that long.  42 U.S.C. § 423(d)(1); 20 C.F.R. § 404.1505(a).  Since an affirmative finding in Step 3 necessarily renders a claimant disabled per se, it is logical to conclude that, without a clause to the contrary, the impairment under SSA Listing 9.08B should be of the same duration as any other disability. Plaintiff has failed to cite to any law or argument to the contrary.

The two additional diagnoses of acidosis in August 2003 did not establish that Plaintiff suffered diabetes mellitus with acidosis for 12 months, nor did it establish that it was expected to last that long.  Indeed, there is no mention of that condition being documented on an average of once every two months either before March 2003 or

-15-

after August 2003.  As such, those two additional incidents did not materially affect Plaintiff's meeting or equaling Listing 9.08B.  The fact remained that Plaintiff failed to demonstrate that he suffered documented acidosis on average of once every two months for twelve months or that he was likely to do so.  Moreover, as these two additional hospitalizations for acidosis were in the record, the ALJ was aware of them.  There is nothing in the record to indicate that the ALJ believed these two additional incidents of acidosis would change the State agency physician's findings.  Therefore, the ALJ properly relied upon the State agency physician's signature on the disability determination form, dated July 28, 2003, and was not required to seek an updated medical opinion.  *See* SSR 96-6p. Ultimately, there was substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not meet or equal Listing 9.08B.

### The ALJ Failed to Provide the Required Specifics to Find Plaintiff Able to Perform Past Relevant Work Under Step 4

Residual functional capacity is the most a claimant can do after considering the limiting effects of the impairment(s).  20 C.F.R. § 404.1545 (2005).  Based upon a consideration of the testimony, as well as the medical and other evidence of the record, the ALJ found that Plaintiff could lift 10 pounds at a time, occasionally carry items such as docket files, small tools and ledgers, occasionally stand and

walk, and be allowed to change positions at will.  (Tr. 44) These findings were more conservative than those by Dr. White or the State agency assessment.  The ALJ decided to limit Plaintiff's lifting to 10 pounds so that he would not be thrown off balance by lifting or carrying too heavy of a load.  (Tr. 44).  Also, the ALJ gave Plaintiff a sit/stand option to accommodate any temporary discomfort, and to assure that he never has to remain on his feet for too long.  (Tr. 44).

The ALJ found Plaintiff had the residual functional capacity to perform his past relevant work experience as a shipping and receiving clerk.  Based on the vocational expert's testimony regarding the shipping and receiving job functions, the ALJ concluded that Plaintiff could perform that job as he did in the past.  (Tr. 44).

Plaintiff complains of the ALJ's Step 4 decision in a number of respects.  First, Plaintiff complains that the ALJ failed to consider the limiting effects of his progressively worsening diabetes mellitus condition. (Op. Brief, pp. 17-18). Next, Plaintiff complains that the ALJ failed to consider the effect that his diabetic regimen has on his work related functional capacity.  However, these vague complaints are argumentative at best and not supported by a single citation to the record.  Thus, these arguments are not persuasive or meritorious.

Plaintiff also complains that the ALJ analyzed his residual functional capacity in relation to doing sedentary work, generally, rather than on the specific demands of his previous work as a shipping

and receiving clerk.  In his decision, the ALJ found that:

> The evidence in this case establishes that the claimant has past relevant work as a shipping and receiving clerk.  The vocational expert testified that the shipping and receiving job was semi-skilled, and performed by the claimant at a sedentary level of exertion.  He also stated that the claimant could return to his job as a shipping and receiving clerk, despite the limitations cited above.
>
> Based on the vocational expert's testimony, I find the claimant can perform his past relevant work as a shipping and receiving clerk, as he actually did that work in the past.

(Tr. 44)

With respect to this claim, Plaintiff is correct.  The Seventh Circuit has demanded that ALJs "specify the duties involved in a prior job and assess the claimant's ability to perform the specific tasks." *Nolen v. Sullivan*, 939 F.2d 516, 519 (7th Cir. 1991).  Here, the ALJ did not list the demands involved in Plaintiff's previous work as a shipping and receiving clerk and did not assess Plaintiff's ability to perform them in his present condition.  However, as illustrated below, this error is harmless and, therefore, does not require remand. *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004).


The Commissioner Satisfied His Burden to Show that Plaintiff was Able to Perform Work in the National Economy in Step 5

Even assuming the ALJ would have found Plaintiff unable to continue in his past relevant work, Plaintiff would not be considered disabled, for Social Security purposes, if he were able to perform any

-18-

other work within his residual functional capacity in the national economy.  The ALJ did find Plaintiff to be able to perform other work within his residual functional capacity in the national economy; specifically, 2,000 regional inspector jobs, 3000 regional general assembler jobs, and 400 regional cashier jobs.  (Tr. 44).  Plaintiff takes issue with this conclusion on a number of fronts.

To start, Plaintiff argues, without any supporting citations to legal authority, that because the ALJ did not rule that he has no transferable skills, the ALJ's Step 5 decision was necessarily based on his transferable skills.  Resting on that unsubstantiated premise, Plaintiff goes on to complain that, pursuant to SSR 82-91, the ALJ failed to set forth his transferable skills in the written decision. This Court disagrees with Plaintiff's contention that the ALJ based his Step 5 decision on Plaintiff's transferable skills.  Contrary to Plaintiff's belief, the ALJ failing to set forth Plaintiff's transferable skills likely indicates that there were no skills to be transferred.  Such a conclusion would be entirely consistent with the vocational expert's testimony that the jobs Plaintiff would be able to do in the national economy were unskilled jobs.  (Tr. 520). Importantly, it was these unskilled jobs that the ALJ ultimately determined Plaintiff could perform in the national economy.  The ALJ was not required to set forth Plaintiff's transferable skills in his written decision because there are no skills to be transferred in performing unskilled jobs.  *See* SSR 82-91 ("[E]ven if it is determined

-19-

that there are no transferable skills, a finding of 'not disabled' may be based on the ability to do unskilled work."). Indeed, paragraph 2(b) of the Policy Statement for SSR 82-91 clearly states that transferability of work skills is at issue only when dealing with skilled or semiskilled jobs.

Next, Plaintiff argues that the ALJ's hypothetical questions posed to the vocational expert were incomplete insofar as Plaintiff's work history is concerned. Plaintiff's exact argument is not readily identifiable, as he states that, "[a]lthough the vocational expert was provided with Muhammad's past work history information[,] only vocational information 'as described' by Muhammad at the hearing in response to the ALJ's questioning was considered." (Pl.'s Opening, p. 24). Apparently, Plaintiff is arguing that the hypothetical questioning was incomplete because it only considered Plaintiff's work history "as described" by Plaintiff, as opposed to Plaintiff's work history. It is well-established that a hypothetical question posed to a vocational expert must be accurate and complete. *Young v. Barnhart*, 362 F.3d 995, 1003-04 (7th Cir. 2004). Nevertheless, even assuming Plaintiff's argument to be factually correct,[1] an incomplete hypothetical question regarding work history may be cured by showing that the vocational expert reviewed Plaintiff's work history prior to testifying and that the records contained the omitted information. *Bradley v. Barnhart*, 175 Fed. Appx. 87, 92 (7th Cir. 2006)(citing

---

[1] A point that the Court does not concede.

-20-

*Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002)).  That is the case here.  It is undisputed that the vocational expert received and reviewed Plaintiff's work history.  (Op. Brief. p. 24; Tr. 517). Thus, the complained of incomplete hypothetical questioned regarding Plaintiff's work history has been cured through the vocational expert's review of Plaintiff's work history prior to his testimony. As such, this complaint is without merit and the Court finds that the ALJ's decision is supported by substantial evidence.

<u>CONCLUSION</u>

For the reasons set forth above, the decision of the Commissioner denying Plaintiff Khalil Muhammad's application for disability insurance benefits is **AFFIRMED.**

**DATED:  November 17, 2006**            **/s/RUDY LOZANO, Judge**
                                         **United States District Court**